**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Berrow, | No. CV-20-01342-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Navient Solutions LLC, | |
| Defendant. | |

Pending before the Court is Defendant Navient Solutions, LLC's ("NSL") Motion for Summary Judgment (Doc. 122) along with Plaintiff's Response (Doc. 134) and NSL's Reply (Doc. 139). Also pending is Plaintiff Michael Berrow's Motion for Partial Summary Judgment Against Defendant Navient Solutions, LLC (Doc. 118) along with NSL's Response (Doc. 133) and Plaintiff's Reply (Doc. 140). The Court exercises its discretion to resolve these motions without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). After consideration of the pleadings and relevant case law, the Court will grant in part and deny in part each of the motions.

**I.    BACKGROUND**

In 2001, Plaintiff and his then-wife co-signed on their daughter's private student loan. (Doc. 119 at 1; Doc. 123 at 3.) Plaintiff's daughter passed away in 2009. (*Id.* at 2 and 4.) In September 2009, Plaintiff called Navient for a status update on the 2001 loan that resulted in Navient's moving the responsibility for the loan to Plaintiff. (Doc. 119 at 4.) Navient also moved responsibility for a 2004 loan for $15,000, though Plaintiff disputes

whether he cosigned that loan. (*Id.* at 4.) About two weeks later, Navient sent Plaintiff an invoice for a 2002 loan with a principal balance of $20,958.09. (*Id.* at 6.) Plaintiff asserts this is his first notice of the 2002 loan. (*Id.* at 7.)

Plaintiff made payments on all three loans for the following eight years. (*Id.* at 9.) Plaintiff repeatedly attempted to persuade Navient that he co-signed only for the 2001 loan. (*Id.* at 10.) Navient investigated a fraud report Plaintiff initiated and determined that Plaintiff was responsible for all three loans. (*Id.* at 11.) Plaintiff experienced financial difficulties and eventually stopped making monthly payments in 2017. (*Id.* at 12.)

After Plaintiff's payments ceased, he alleges Navient began repeatedly calling him. Plaintiff alleges that Navient attempted to hide its identity while calling him from more than thirty unique phone numbers to harass him. (Doc. 35 at 5.) On July 31, 2017, Plaintiff communicated his revoking his consent for Navient to continue contacting him. (*Id.*) Plaintiff alleges he renewed objection to Navient's calling him on at least fifteen more occasions, which resulted from about 360 automated phone calls. (*Id.* at 5–6.) Navient allegedly left "pre-recorded or artificial voice messages" from some of these calls. (*Id.* at 7.) The volume of phone calls allegedly caused consistent interference with his work. (*Id.*)

Plaintiff filed this lawsuit, alleging claims for violations of the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. § 227 and intrusion upon seclusion. (Doc. 35 at 8.) Plaintiff specifically alleges that Navient violated the TCPA when it called him with a prerecorded voice or an automatic telephone dialing system. (*Id.*) Plaintiff filed another lawsuit, alleging an additional claim against Navient for violations of the Fair Credit Report Act ("FCRA") under 15 U.S.C. § 1681s-2(b). (*See* No. 2:21-cv-01624-SMB, Doc. 1 at 14.) The cases have since been consolidated (*see* Doc. 97), and both parties now move for summary judgment.

**II.    LEGAL STANDARD**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The

movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see also Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up); *see also* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. DISCUSSION**

    **A. Telephone Consumer Protection Act ("TCPA")**

Under the TCPA, it is "unlawful for any person within the United States . . . to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . .cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). To prevail on a TCPA claim, a plaintiff must prove that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the

recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). An automatic telephone dialing system ("ATDS") is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The United States Supreme Court says that "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021).

NSL moves for summary judgment on the TCPA claim because NSL's telephone system does not meet the definition of an ATDS. Plaintiff concedes that under the Ninth Circuit's interpretation of the ATDS definition in *Borden v. eFinancial, LLC*, 53 F.4th 1230(9th Cir. 2022) that this claim must be dismissed. Summary Judgment will be granted on this claim.

### B. Intrusion Upon Seclusion

Under Arizona law, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Coates v. Scheid*, No. 2 CA-CV 2010-0114, 2010 WL 5209373, at *3 (Ariz. Ct. App. Dec. 14, 2010) (quoting *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 853 (Ariz. App. 1997)). Telephone calls are actionable if they are "'repeated with such persistence and frequency as to amount to a course of hounding the plaintiff' and constitute 'a substantial burden to his existence.'" *Fierros v. Quebedeaux Buick GMC Inc.*, No. CV-20-00245TUC-RM (MSA), 2020 WL 8673974, at *6 (D. Ariz. Nov. 24, 2020), report and recommendation adopted, No. CV-20-00245-TUC-RM (MSA), 2021 WL 763811 (D. Ariz. Feb. 26, 2021) (quoting Restatement (Second) of Torts § 652B cmt. d).

NSL moves for summary judgment on the claim for intrusion upon seclusion. NSL's position is that 323 calls over a 14-month period of time is not enough on its own to support the claim. Additionally, they argue that Plaintiff cannot show that the calls were

harassing or threatening. Plaintiff responds by arguing that the issue of reasonableness is one for the jury. Plaintiff also cites to evidence that he repeatedly asked NSL to stop, that each call was another reminder of his daughter's death, that he had made multiple attempts to fix the dispute, and that the calls caused him stress and frustration.

The cases cited by the parties do support the argument that numerous calls alone is not enough. There must be something threatening or harassing about the calls. In *Inzerillo v. Green Tree Servicing, LLC*, No. 13-CV-06010-MEJ, 2014 WL 6660534, at *5 (N.D. Cal. Nov. 24, 2014), the Court granted summary judgment against plaintiffs who received no more than 10-12 calls and most of the time didn't answer the calls. That same court, however, denied summary judgment against the plaintiff who received up to 98 calls over a two-month period, and some of the calls included threats. The Court held that call volume alone is not enough. *Id.* at *5.

*Quinlan v. CitiMortgage, Inc.*, No. 2:11-cv-00986-MCE-EFB, 2012 WL 2401380 (E.D. Cal. June 22, 2012) seems to support Plaintiff's position. However, the Court in *Quinlan* found that the numerous phone calls could satisfy the first element of the claim, intrusion into a private place. The Court did not hold that calls alone are enough. The Court said the number of calls along with the fact that it was a non-existent debt that was accompanied by the underlying threat of losing one's home might be highly offensive and should be decided by the jury. *Id*. at *6.

In *Herrera v. Allianceone Receivable Mgmt., Inc*., No. 14-CV-1844-BTM-WVG, 2016 WL 7048318, at *7 (S.D. Cal. Dec. 5, 2016) the plaintiff received numerous calls but also had told Defendant numerous times he didn't owe the debt, attempted to clarify the error, and had a court order finding that the plaintiff was not the true debtor. In *Panahiasl v. Gurney*, No. 04-04479 JF, 2007 WL 738642, at *3 (N.D. Cal. Mar. 8, 2007), plaintiffs were receiving abusive calls at their place of employment and collection letters were being sent in care of the employer.

All of the cases cited above had something more than a lot of calls. Here, Plaintiff has also presented evidence of something more. Specifically, Plaintiff has presented that

despite all of the evidence given to NSL that he was not obligated to pay the debt, the calls continued. He also told them numerous times to stop calling, NSL knew that the debt was that of Plaintiff's deceased daughter, and the recording of one of the collection calls. The Court finds that there are material facts in dispute over the circumstances and substance of the calls that preclude summary judgment. *See Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 465 (9th Cir.1997) (in determining "offensiveness" one should consider the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded).

### C. Fair Credit Reporting Act ("FCRA")

Congress enacted the FCRA to ensure fair and accurate credit reporting, to promote efficiency in the banking system, and to protect consumer privacy. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). "[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies], called 'furnishers' in the statute." *Id.* o state a viable FCRA claim, Plaintiff must

> plead the following four elements . . . against a credit furnisher: (1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s-2(b)(1)(A)–(E).

*Cook v. Mountain Am. Fed. Credit Union*, No. 2:18-cv-1548-HRH, 2018 WL 3707922, at *3 (D. Ariz. Aug. 3, 2018).

Once a furnisher is notified of the dispute, it must investigation. That investigation must be reasonable. *Gorman*, 584 F.3d at 1157. "A reasonable investigation requires 'an inquiry likely to turn up information about the underlying facts and positions of the parties,' which is not achieved by 'a cursory or sloppy review of the dispute.'" *Henry v. Freedom Mortg. Corp.*, No. CV-19-01121-PHX-SRB, 2020 WL 8921079, at *5 (D. Ariz. Apr. 27,

2020) (quoting *Gorman*, 584 F.3d at 155). Reasonableness is usually a question for the jury. *See Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1252 (9th Cir. 2022).

NSL moves for summary judgment on the FCRA claim because Plaintiff cannot show that the investigation done by NSL was unreasonable. Mr. Berrow responds that the issue of reasonableness should be left for the jury to decide. Mr. Berrow also points to multiple material facts that are in dispute. The Court agrees with Mr. Berrow that there are too many facts in dispute to allow this Court to find NSL's investigation was reasonable. NSL's motion will be denied as to the FCRA claim.

Mr. Berrow moves for summary judgment on the issue of liability for the 2002 Loan only. Mr. Berrow argues that the reporting of debt related to the 2002 Loan was inaccurate, that NSL failed to conduct a reasonable investigation, and NSL acted willfully. NSL does not respond to the argument by Mr. Berrow that the reporting was inaccurate, but rather argues that their investigation was reasonable and NSL did not knowingly or intentionally violate the FCRA. Therefore, the Court proceeds under the presumption that the reporting was inaccurate.

Here, Mr. Berrow argues that the record shows that the 2002 application was denied as to Mr. Berrow. (Doc. 119 ¶19.) His credit was never approved so he was never responsible for the 2002 loan. (Doc. 119 ¶ 20.) NSL attempts to dispute these facts with deposition testimony from Nicole Garnett. However, the deposition testimony does not dispute what the documents show. Ms. Garnett testified that she looked at the computer record and simply because this loan was associated with Mr. Berrow's name and social security number in their system, she assumed he was a cosigner. (Doc. 119-2 at 43.) Additionally, NSL does not have a promissory note signed by Plaintiff to obligate him on the 2002 loan. (Doc. 119 at 22.) NSL says a promissory note is never signed in NSL's system, but their system does contain a signed application. (Doc. 132 at 22.) Notably, NSL does not dispute that the application was denied as to Plaintiff.

In May 2021, Mr. Berrow completed a sworn Federal Trade Commission Identity Theft Report and submitted the same along with a picture of his driver's license and a

detailed dispute letter to the three national CRAs—Experian, Trans Union, and Equifax. All three CRAs forwarded Mr. Berrow's dispute to NSL. At this point, it is Mr. Berrow's position that NSL did not conduct any investigation into the dispute. Mr. Berrow relies on the testimony of Nicole Barnett. Ms. Barnett testified that NSL did not complete a fraud investigation. NSL disputes this by arguing that the quotes used by Mr. Berrow are taken out of context. NSL explains that this testimony relates to the fraud department. The credit bureau department of NSL responded to the CRAs after reviewing the account to confirm the accuracy of the account information. Because the dispute included a claim of fraud, the fraud department was notified and then conducted a separate investigation.

The Court finds this distinction meritless. From all the information provided, the "investigation" of the credit bureau department seemed to be no more than reviewing the records on the computer which show that Mr. Berrow's name and social security number are associated with three loans. However, we know those records are wrong because Mr. Berrow was never approved for the 2002 loan.

The Court finds this situation is similar to that in *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008). There, Experian conducted an investigation into a consumer dispute. Experian overlooked documents in the file expressly stating that no judgment was entered against the debtor. Here, NSL overlooked documents in their own file that Mr. Berrow's application as a co-signor was denied for the 2002 loan. Likewise, *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) is also instructive. In that case, MBNA agents testified that they generally do not look beyond the information contained in MBNA's computerized information system when investigating consumer disputes. The investigators do not look at the underlying documents. The Fourth Circuit held that "a jury could reasonably conclude that MBNA acted unreasonably in failing to verify the accuracy of the information contained in the CIS." *Johnson*, 357 F.3d at 431. This case is the same, where NSL does a cursory review without looking at the underlying documents before verifying the debt to the CRAs. The Court finds that no reasonable jury could find that this cursory investigation was reasonable, and Plaintiff's Motion will therefore be granted.

Plaintiff's Motion also asks the Court to grant summary judgment on the issue of willfulness. "To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020). Under the facts described above, the Court finds that a jury could find that NSL did not act willfully.

### III.  CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** granting NSL's Motion for Summary Judgment (Doc. 122) on the TCPA claims and denying NSL's Motion on the Intrusion Upon Seclusion and FDCA claims.

**IT IS FURTHER ORDERED** granting Plaintiff's Motion for Partial Summary Judgment (Doc. 118) as to liability for the FCRA violation, but denying the Motion in so far as it asks for a finding on willfulness.

Dated this 7th day of August, 2023.

Honorable Susan M. Brnovich
United States District Judge